United States District Court
Southern District of Texas

**ENTERED**
January 24, 2020
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **SERVANDO GONZALEZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:19-CV-145** |
| | § | **CRIM. ACTION NO. 5:15-CR-1112-01** |
| | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Motion"). (Dkt. No. 1); (Cr. Dkt. No. 234).[1] Petitioner raises four grounds for relief: (1) ineffective assistance of counsel for failure to investigate; (2) ineffective assistance of counsel for violating his right to a speedy trial; (3) ineffective assistance of counsel based on misadvise; and (4) actual innocence. (Dkt. No. 1 at 4–8). On November 6, 2019, Petitioner's Motion was referred to this Court by the District Judge for findings of fact and recommendations of law. (Dkt. No. 4). The Court ordered the Government to submit a response. (Dkt. No. 5). The Government's response (Dkt. No. 9) seeks dismissal of Petitioner's claims but does not challenge the timeliness of his Motion.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court submits the following Report and Recommendation and **RECOMMENDS** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. No. 1); (Cr. Dkt. No. 234) be **DENIED**. The Undersigned will therefore recommend that Petitioner's action be **DISMISSED WITH PREJUDICE**.

### I. Legal Standard

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal

---

[1] "Dkt. No." refers to Petitioner's civil case, and "Cr. Dkt. No." refers to Petitioner's criminal case.

and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992*)* (per curiam). Generally, § 2255 claims fall under four categories: challenges to the constitutionality or legality of a sentence; challenges to the district court's jurisdiction to impose the sentence; challenges to the length of a sentence in excess of the statutory maximum; and claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *see United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). After conducting an initial examination of the motion, a court must dismiss if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief...." 28 U.S.C. § 2255; Rule 4(b), Rules Governing Section 2255 Proceedings; *United States v. Sheid*, 248 F.App'x. 543, 544 (5th Cir. Sept. 20, 2007). Additionally, a § 2255 motion can be dismissed without an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

While claims raised by pro se litigants must be liberally construed to ensure that their allegations are not unfairly dismissed because of their unfamiliarity with the law, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1990)).

## II. Discussion

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at all "critical stages" of criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). To prevail on an ineffective-assistance-of-counsel claim, the petitioner must show: (1) that counsel's performance was so deficient that it fell below an "objective standard of reasonableness" and (2) that the deficient performance prejudiced the petitioner's defense. *United States v. Crain*, 877 F.3d 637, 646 (5th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Where, as here, the petitioner claims ineffective assistance of counsel, the burden of proof is on the petitioner to

demonstrate counsel's ineffectiveness by a preponderance of the evidence. *Cervantes v. United States*, No. 5:11-CR-425-2, 2015 WL 12527263, at \*3 (S.D. Tex. June 22, 2015) (citing *Martin v. Maggie*, 711 F.2d 1273, 1279 (5th Cir. 1983)).

An attorney's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's failure to raise meritless arguments cannot form the basis of an ineffective-assistance-of-counsel claim. *United States v. Webster*, 392 F.3d 787, 796 n.18 (5th Cir. 2004); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

A petitioner establishes prejudice where he shows a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Strickland*, 466 U.S. at 694. When either prong of the *Strickland* test is not satisfied, it will ordinarily be unnecessary to analyze the other prong. *See Strickland*, 466 U.S. at 700.

### 1. Failure to Investigate

Petitioner bases his first claim for ineffective assistance of counsel on his counsel's alleged failure to investigate. (Dkt. No. 1 at 4). In support, Petitioner states that he "maintained his innocence for 26 months," and that "there was no evidence linking the movant to any controlled substance or any evidence of any transactions involving him." (Dkt. No. 1-1 at 1). Petitioner asserts, "If the appointed counsel would have investigated the case properly, there would have been evidence that movant was not involved in the alleged offense." (*Id.*). Petitioner further contends that his attorney failed to investigate, thereby inducing his plea. (*Id.*). The Government argues that these are general and conclusory statements. (Dkt. No. 9 at 19). The Government contends that Petitioner must

allege with *specificity* what an investigation would have revealed and how it would have altered the outcome of trial for Petitioner to succeed on a claim for counsel's failure to investigate. (*Id.*) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). The Court agrees.

A defendant's counsel "has a duty to make a reasonable investigation of [the] defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Smith v. Dretke*, 422 F.3d 269, 283–84 (5th Cir. 2005) (*citing Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997)). While a defendant's counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). However, "a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Green*, 882 F.2d at 1003. Furthermore, a petitioner's allegations must overcome the "strong presumption" that his counsel's decisions were professionally competent. *Strickland*, 446 U.S. at 689.

Petitioner does not "allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial." *Green*, 882 F.2d at 1003. Petitioner merely concludes, "[T]here is evidence of actual innocence." (Dkt. No. 1-1 at 1). He does not state what evidence would have been discovered or its impact on his case, nor has he produced any evidence to support his theory of innocence. Petitioner's conclusory failure-to-investigate claim is insufficient to obtain collateral relief under § 2255. *See, e.g.*, *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Moreover, there is no presumption of prejudice based on the failure to investigate. *Woodard v. Collins*, 898, F.2d 1027, 1029 (5th Cir. 1990). Petitioner's claim is also deficient because he has failed to allege prejudice as a result of his counsel's alleged failure to investigate. Therefore, the Court **RECOMMENDS** this claim be **DENIED**.

### 2. Speedy Trial Violation

Petitioner's second claim is for ineffective assistance of counsel for violating his constitutional rights to a speedy trial. (Dkt. No. 1-1 at 2). Petitioner first states that he was detained for 26 to 28 months in county jail before entering his guilty plea. (*Id.*). Petitioner then contends that his counsel never submitted a motion for a speedy trial. (*Id.*). Petitioner also questions why the prosecution and district judge changed. (*Id.*). In sum, Petitioner alleges that there was a violation of his Sixth Amendment right to a speedy trial due to "lack of evidence in the case," which also weighed upon the voluntariness of his plea. (*Id.*). The Government refutes Petitioner's allegation that he was detained for 28 months *before* his guilty plea.[2] (Dkt. No. 9 at 24). Further, the Government avers that Petitioner's counsel was not ineffective because Petitioner waived his speedy trial rights.

The Sixth Amendment guarantees a defendant the right to a speedy trial. *United States v. Estrada*, 617 F.App'x. 338, 339 (5th Cir. 2015) (citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). The right to a speedy trial attaches once a person is arrested, indicted, or otherwise formally charged. *Id.* at 340 (citing *United States v. Serna–Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003)). Under the Speedy Trial Act (the "Act"), trial must commence within 70 days from the earlier of the date the indictment was filed, or from the date the defendant appears before the officer of the court where the charge is pending. 18 U.S.C. § 361(c)(1). Certain pretrial delays are automatically excluded from the Act's time limits. Examples include delays caused by pretrial motions and delays caused by certifying a case as "complex." 18 U.S.C. § 3161(h)(1)(F).

Contrary to Government's contention, a defendant may not expressly waive his rights under the Speedy Trial Act. *See e.g.*, *United States v. Blackwell*, 12 F.3d 44, 47 (5th Cir. 1994). However, if the trial judge determines that the "ends of justice" served by a continuance outweigh the interest of the public and the defendant in a speedy trial, the

---

[2] The Court agrees that Petitioner's allegation is unfounded. Petitioner was indicted on September 15, 2015 (Cr. Dkt. No. 1) and pleaded guilty on May 3, 2016. (Cr. Dkt. Nos. 96, 97). This approximately seven-month period is the relevant time frame to analyze under the Speedy Trial Act. *See United States v. Green*, 508 F.3d 195 (5th Cir. 2007). Time that Petitioner spent detained *after* he pleaded guilty does not impact his rights under the Speedy Trial Act. *See id.*

delay occasioned by such continuance is excluded from the Act's time limits. 18 U.S.C. § 3161(h)(8)(A).

Petitioner was indicted on September 15, 2015 (Cr. Dkt. No. 7), and shortly thereafter, on October 27, 2015, he filed a motion to continue his pretrial conference. (Cr. Dkt. No. 23). Petitioner then filed successive motions for continuances. (Cr. Dkt. Nos. 37, 54, 65, 79); (Min. Entry dated Apr. 28, 2016). These motions requested additional time for Petitioner's counsel to review discovery and independently investigate the facts. (*Id*.). The Court explicitly considered the speedy trial implications and granted the continuances because failure to do so would "result in a miscarriage of justice." (Cr. Dkt. Nos. 41, 64, 68, 80). Therefore, the filing of these pretrial motions effectively tolled the clock for the purposes of the Act. *See* 18 U.S.C. § 3161(h)(1)(F) (delays "resulting from a continuance granted by a judge" may be excluded, but only if the judge finds that "the ends of justice" are served by taking such action).

Moreover, the Government filed a motion to certify the case as complex on December 2, 2015. (Cr. Dkt. No. 38). The Court granted this motion and extended deadlines to file pretrial motions and for the final pretrial conference. (Cr. Dkt. No. 42). In *United States v. Edelkind*, the court recognized that the district court has discretion to accommodate delays where a case is so unusual or so complex that it is unreasonable to expect adequate preparation and trial within the time limits established by the Act. 525 F.3d 388, 397 (5th Cir. 2008). The *Edelkind's* court went on to note that establishing a case as complex constitutes a sufficient ground to satisfy the statutory requirement for a continuance. Accordingly, the Court in the present case satisfactorily tolled the Act's time limit when it extended deadlines after certifying the case as complex. (Cr. Dkt. No. 38).

The Court finds that Petitioner's speedy trial rights were not violated. Thus there can be no valid claim for ineffective assistance of counsel based on such a violation. The Court therefore **RECOMMENDS** this claim be **DENIED**.

### 3. Misadvise

Petitioner's third claim for ineffective assistance of counsel is based on his

counsel's advice to plead guilty. (Dkt. No. 1 at 6). Petitioner states that his counsel advised him, "he would be sentenced to a term of 120 months if he [pleaded] out and he would be out sooner if he did not take it to trial." (Dkt. No. 1-1 at 3). The Government conversely alleges that this claim is refuted by the record. (Dkt. No. 9 at 25). The Government contends that both the Court and the plea agreement informed Petitioner that he faced a ten-year minimum penalty. (*Id*.). Additionally, the Government states that Petitioner was aware that any sentencing range he received from counsel was an estimate because he confirmed as much in his plea agreement. (*Id*.). The Government also highlights key points from Petitioner's rearraignment in which the Court advised Petitioner that guidelines were advisory and not binding. (*Id*. at 26). Petitioner confirmed that he had discussed the Court's *discretionary* sentencing role with his counsel prior to rearraignment. (*Id*. at 27). The Court agrees that Petitioner's own sworn statements at his plea colloquy disprove his contentions.

The Fifth Circuit affords "great weight" to a defendant's statements at his plea colloquy. *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). "Solemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1998) (explaining that a criminal defendant will ordinarily "not be heard to refute his testimony given under oath when pleading guilty"). Accordingly, when a § 2255 petitioner brings a claim at odds with his sworn testimony, he must provide independent corroboration of his allegations. *United States v. Gonzalez*, 139 F.3d 899, 1998 WL 127868, at *2 (5th Cir. Mar. 12, 1998) (per curiam) (citing *Potts v. Zant,* 638 F.2d 727, 751 (5th Cir. Unit B Feb. 1981)). Specifically, if a petitioner claims he was denied effective assistance at the plea-bargaining stage, his allegations must be corroborated by the affidavit of a "reliable" third person. *Id.* (citing *Fuller*, 769 F.2d at 1099). Without such an affidavit, the claim is subject to summary dismissal. *Ontiveros v. United States*, No. 5:09-CR-1547-2, 2015 WL 12815287, at *4 n.37 (S.D. Tex. Feb. 25, 2015).

At Petitioner's plea colloquy, the Magistrate Judge reviewed the contents of the

plea agreement with Petitioner. (Cr. Dkt. No. 201 at 19). Specifically, the Magistrate Judge asked, "Has anyone promised you anything else outside of this written plea agreement to get you to plead guilty today?" (*Id.*). Petitioner responded, "No, not at all." (*Id.*). The Magistrate Judge continued, "Sir, you need to understand that this agreement that you have with the Government . . . it is *not binding on the District Judge.* At sentencing, the District Judge can choose to follow the agreement or the recommendations in it or not to. You understand?" (*Id.*) (emphasis added). Petitioner responded affirmatively, "That's right." (*Id.*). The Magistrate Judge then explained the sentencing guidelines to Petitioner as follows:

> Now, once the District Judge determines how your case is scored under the Sentencing Guidelines, you need to understand that he has the ability or the authority to get within those statutory penalty ranges; he has the ability or the authority to give you a more severe sentence than what is recommended by the Sentencing Guidelines, and he has the ability to give you a less severe sentence than what is recommended by the Sentencing Guidelines.

(*Id.* at 33). Petitioner stated that he understood this. (*Id.*). Yet, the Magistrate Judge reiterated, ". . . if you get a sentence that you think is too harsh or you disagree with, you cannot withdraw your guilty plea. . ." (*Id.* at 35). Again, Petitioner confirmed that he understood. (*Id.*). Later, the Magistrate Judge inquired, "So, my question is, have you discussed everything that I discussed with you this morning with your attorney before seeing me?" (*Id.* at 41). Petitioner emphatically stated, "Exactly what you told me; that's what I talked to her about." (*Id.*).

Plaintiff's plea agreement further contradicts Petitioner's position by explicitly outlining the sentencing range for Petitioner. (Cr. Dkt. No. 96 at 1–2). It provided that Petitioner faced a mandatory minimum term of ten years and a maximum term of life imprisonment. (*Id.*).

Petitioner has provided no independent testimony that would contradict the signed statements made in his plea agreement (*Id.*) or those made before the Magistrate Judge at his plea colloquy. (Cr. Dkt. No. 201). In support of Petitioner's misadvisement

claim, Petitioner merely provides additional statements of innocence. The Court separately addresses Petitioner's innocence below. As such, the Court **RECOMMENDS** Petitioner's misadvisement claim be **DENIED**.

### B. Actual Innocence

Petitioner's final claim is an assertion of "actual innocence." (Dkt. No. 1 at 8). In support, Petitioner states, "[He] does not understand why he was implicated in the offense charged and how he was even involved." (Dkt. No. 1-1 at 3). Petitioner avers that he supported himself and family without selling drugs. (*Id*. at 4). Further, Petitioner claims that he pleaded not guilty, "but the government kept on withholding him in custody to make him break into taking a plea (sic)." Petitioner then implicates the miscarriage of justice exception. (*Id*.) ("There is a grave Miscarriage of Justice in this case.").[3] The Government argues that Petitioner's claim of actual innocence is general and conclusory and refuted by admissions made to the Court at his rearraignment. (Dkt. No. 9 at 19–20). The Court agrees that Petitioner's allegations are insufficient.

"The claim of actual innocence does not itself provide a basis for relief." *Wilkerson v. Cain*, 233 F.3d 886 (5th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 40 (1993). "Rather, it is a gateway to consideration of claims of constitutional error that otherwise would be barred from review." *Tovar-Zapatero v. United States*, No. 5:10-CR-1474, 2013 WL 12228677, at *2 (S.D. Tex. Dec. 19, 2013) (citing *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012). As the Supreme Court explained in the context of a state habeas petition, this "rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors

---

[3] In support of his actual innocence claim, Petitioner adds, "Another question is, did the counsel that was appointed even have experience in defending the CONSTITUTIONAL RIGHTS of his/her client?" (Dkt. No. 1-1 at 4). The Court reads the allegations of Petitioner liberally because of his pro se status. As such, the Court determines that this allegation is more appropriately one for ineffective assistance of counsel. However, as discussed earlier, this contention is conclusory and meritless. Though it is Petitioner's burden to demonstrate counsel's ineffectiveness, he fails to allege any specific act by his counsel that would have fallen below the standard of objective reasonableness. *Martin*, 711 F.2d at 1279. Petitioner merely raises the question of whether his counsel was experienced. (Dkt. No. 1-1 at 4). Without more, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Accordingly, this claim is without merit.

of fact." *Herrera*, 506 U.S. at 400. The argument that a sentence or conviction is a "miscarriage of justice" is applied only in cases of actual innocence and is used as an exception to procedural default by a petitioner. *Casas-Amador v. United States*, No. 3:15-CR-336-N-1, 2019 WL 1243868, at *3 (N.D. Tex. Jan. 29, 2019), *report and recommendation adopted*, No. 3:15-CR-336-N-1, 2019 WL 1243139 (N.D. Tex. Mar. 18, 2019) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 391, 397 (2013)).

Insofar as Petitioner relies on the miscarriage of justice exception, his assertion fails. Petitioner filed his § 2255 Motion timely, and thus faces no procedural barriers. Accordingly, the miscarriage of justice principle is not applicable to Petitioner's case. Likewise, Petitioner's actual innocence claim does not apply. Actual innocence is not a standalone basis for relief under § 2255, but rather a method to overcome a procedural bar. *Herrera*, 506 U.S. at401 ("Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."). While Petitioner may face challenges finding substantive relief under § 2255, he faces no *procedural* bar for which an actual innocence claim would be necessary. Accordingly, his actual innocence claim fails as a basis for relief. The Court therefore **RECOMMENDS** that this claim be **DENIED**.

That notwithstanding, Petitioner fails to present a credible claim of actual innocence. An actual innocence claim requires the petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Perkins*, 569 U.S. at 401 (quotations and quoted case omitted). As a threshold requirement, a petitioner must present *new evidence* in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence.'" *Id*. at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner presents no newly discovered evidence in support of his claim for actual innocence. Petitioner supports his claim for actual innocence only with the assertion that he is innocent and that he pleaded as a result of his time in custody. (Dkt. No. 1-1 at 3–4). This is patently insufficient. *Perkins*, 569 U.S. at 386 (concluding that a petitioner

presents a credible claim of actual innocence by producing sufficient *new evidence*). Even under the most liberal construction, Petitioner's argument is not supported by any new evidence. *See Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'") Thus, even if Petitioner's actual innocence claim was applicable, he wholly failed to satisfy the rigorous standard in *Schlup* for demonstrated actual innocence.

The Court also agrees with the Government's argument that Petitioner's statements made during his rearraignment directly contradict his assertions of actual innocence. (Dkt. No. 9 at 19–20). At rearraignment, the Government described the events that led to Petitioner's conviction. (Cr. Dkt. No. 201 at 42–48). The Court specifically instructed Petitioner, "[L]isten carefully to what the Government states; let me know if you disagree with any of these facts." (*Id*. at 42). Nonetheless, Petitioner agreed that on multiple instances he delivered various amounts of cocaine and methamphetamines to undercover Drug Enforcement Administration agents. (*Id*. at 42–48). Petitioner further admitted that he was involved in a conspiracy to transport cocaine and methamphetamine. (*Id*. at 42). After the Government's lengthy and detailed recitation, the Court explicitly asked Petitioner, "Were the facts all correct?" (*Id*. at 48). Petitioner responded, "That's right." (*Id*.). In response to questions by the Court, Petitioner confirmed that he knew he was transporting cocaine and he confirmed the amount of money he was paid for doing so. (*Id*. at 49). Thus, Petitioner's claim that he does not "understand why he was implicated in the offense" is directly refuted by his own admissions.

### C. Voluntariness of Petitioner's Plea

Petitioner does not assert an involuntary plea as an independent ground for relief. However, Petitioner calls into question the voluntariness of his plea throughout his § 2255 Motion. Petitioner states, "[D]ue to the fact that movant was detained for an excessive amount of time that weighed on his mind that if he did not plea out that they would not let him out. There is a question as to how voluntary was the Rule 11 plea

11 / 15

bargain, due to the fact that the appointed council never advised movant properly about the rights afforded to him." (Dkt. No. 1-1 at 2). Petitioner further contemplates, "There is a question as to what kind of state of mind movant was into make a rational decision about the plea? Can being locked up in a cage with only one hour of recreation for two years[4] change the state of mind in a normal human being that has never been in trouble in his whole life?" (*Id*. at 3). He also states, "He continued to plead not guilty through out this whole deal and since he plead not guilty the government kept on withholding him in custody to make him break into taking a plea (sic)." (*Id*. at 4). Because the Court liberally construes pro se pleadings, and in the interest of completeness, the Court analyzes the voluntariness of Petitioner's plea as a potential ground for relief under his § 2255 Motion.

To be constitutionally valid, a guilty plea must be knowing and voluntary. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). A guilty plea is knowing if a defendant understands the consequences of the plea. *United States v. Sanders*, 98 F.3d 1338, 1338 (5th Cir. 1996) (not selected for publication) (citing *United States v. Young*, 981 F.2d 180, 184 (5th Cir. 1992)). Generally, with respect to sentencing, a defendant will be deemed fully aware of a plea's consequences if they understand the maximum potential prison term for the charged offense. *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). A guilty plea is voluntary if it did not result from threats, misrepresentation, unfulfilled promises, or bribes. *Brady v. United States*, 397 U.S. 742, 755 (1970). Where a defendant pleads guilty based on a promise by his own counsel or the prosecutor, whether the promise can be fulfilled, breach of that promise renders the plea involuntary. *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *see Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989) (an "actual promise" by counsel that a lesser sentence will be imposed, as opposed to a mere statement of probabilities, renders a guilty plea involuntary).

In determining whether a plea is knowing and voluntary, courts examine the substance of the plea colloquy itself. *See, e.g., United States v. Cothran*, 302 F.3d 279,

---

[4] As noted above, Petitioner misrepresents the amount of time he was in custody prior to pleading guilty, as the record reflects that it was approximately seven months. *See supra* note 2

283–84 (5th Cir. 2002). As discussed, a defendant will not be allowed to refute their own prior testimony given under oath at a plea hearing. *Cervantes*, 132 F.3d at 1110. Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings. *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)) (quotations omitted). To overcome the "heavy burden" of a prior attestation of voluntariness, a defendant must show that the guilty plea was so much the product of misunderstanding, duress, or misrepresentation by the court, prosecutor, or defense counsel as to make the plea a constitutionally inadequate basis for imprisonment. *United States v. Diaz*, 733 F.2d 371, 373–74 (5th Cir. 1984).

A defendant's own affidavit, containing self-serving conclusory allegations, is insufficient to carry this burden. *See United States v. Merrill*, 340 F. App'x 976, 978 (5th Cir. 2009) (per curium) (citing *Cervantes*, 132 F.3d at 1110); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) ("[M]ere contradiction of [the defendant's] statements at the guilty plea hearing will not carry his burden."). Instead, to be entitled to relief on the basis of alleged promises that are inconsistent with representations made at a plea hearing, a defendant must present affidavits from reliable third parties establishing the exact terms of the alleged promise, the time and place of the promise, and the precise identity of an eyewitness to the promise. *Merrill*, 340 F. App'x at 978 (citing *Cervantes*, 132 F.3d at 1110). Absent such independent indicia of the likely merit of a defendant's contentions, collateral relief may be denied. *Cervantes*, 132 F.3d at 1110.

Here, Petitioner's statements in response to the Court's admonitions at his rearraignment show that his guilty plea was knowing and voluntary. As discussed above, the Court addressed Petitioner's potential maximum sentence of life in prison with a fine of up to ten million dollars, a hundred-dollar assessment, and a maximum of life of supervised release. (Cr. Dkt. No. 201 at 28, 30). Petitioner responded affirmatively under oath. (*Id.* at 30). The Court summarized the terms of the written plea agreement. (*Id.* at 42–47). Specifically, the Court discussed the factual basis of the plea agreement, which included the Government's recitation of the facts included in the plea. (*Id.* at 48). The Court gave Petitioner an opportunity to disagree with any of the facts, and Petitioner

responded that they were correct. (*Id.*). The Court even pointedly asked Petitioner's counsel, "Did you discuss the potential defense of duress with your client," to which Petitioner responded, "Yes, I talked to her about that." (*Id.* at 50). The Court also explained all of the rights that Petitioner would be giving up by pleading guilty and received Petitioner's affirmation that he had not been promised anything outside of the plea agreement to coerce his plea. (*Id.* at 19). Petitioner also denied emphatically that anyone had forced or threatened him to induce his plea. (*Id.* at 26). Conclusively, the Court questioned Petitioner:

> Are you pleading guilty today freely and voluntarily, that is, is this your decision to do so? I want to make sure there's not someone behind the scenes putting pressures on you to give up your right to a trial if you indeed want one. So, are you doing this voluntarily today; is this your decision to plead guilty?"

(*Id.* at 26). Petitioner responded, "That's right." (*Id.* at 27).

As discussed, Petitioner's affirmations under oath are given a strong presumption of verity. These statements also directly contradict his allegations that his guilty plea was prompted by the Government's coercion. Petitioner was given the opportunity to discuss any "pressures" that may have induced his plea. Nonetheless, Petitioner confirmed that his plea was voluntary. Petitioner's self-serving allegations are insufficient to establish otherwise. And to the extent that Petitioner so claims, the Court finds that being held in custody for seven months, without additional pressures, does not constitute duress or coercion. It certainly does not do so based on the record presented by Petitioner. Thus, the Court finds that Petitioner's plea was voluntary. The Court **RECOMENDS** that Petitioner's claim based on an involuntary plea be **DENIED**.

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Dkt. No. 1); (Cr. Dkt. No. 234). Because Petitioner's claims are meritless, the Court **RECOMMENDS** that Petitioner's action be **DISMISSED WITH PREJUDICE.**

### IV. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

The Clerk of Court is **DIRECTED** to mail Petitioner a copy of this Order by Federal Express return receipt requested at the address indicated in his most recent filing.

**SIGNED** on January 24, 2020.

_____
John A. Kazen
United States Magistrate Judge